## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Wendy J. B.-I.,                                            Case No. 21-CV-0238 (ECT/JFD)

                           Plaintiff,

v.                                                **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,

                           Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Wendy J. B.-I. seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). Plaintiff contends she is disabled primarily by Complex Regional Pain Syndrome ("CRPS") but also degenerative disc disease of the lumbar spine, leg length discrepancy, right foot drop, depression, and attention deficit disorder. The case is currently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 26) and Defendant's Motion for Summary Judgment (Dkt. No. 29), which have been referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(a)(3)(D).

Plaintiff seeks reversal of the Commissioner's final decision and remand on two grounds: (1) the administrative law judge ("ALJ") did not address Social Security Ruling ("SSR") 03-2p in evaluating Plaintiff's CRPS, and (2) the ALJ erred in considering medical opinion evidence from medical provider Kelly Thompson, RN, CNP. As set forth below, the Court concludes that the ALJ did not err in either respect and accordingly recommends

1

that Plaintiff's motion be denied, the Commissioner's motion be granted, and the Commissioner's final decision be affirmed.

## I.    Background

Plaintiff applied for DIB benefits on February 5, 2019, alleging disability beginning on May 2, 2018. (Soc. Sec. Admin. R. (hereinafter "R.") 201, 204.)[1] The May 2, 2018 date was based on a previous DIB claim, which was denied on May 1, 2018. (R. 66–75.) Plaintiff's DIB application listed the medical conditions limiting her ability to work as CRPS, degenerative joint disease, a lumbar fusion surgery in 2010, major depressive disorder, palindromic rheumatism, failed back syndrome, foot-drop syndrome, hand weakness, restless leg syndrome, weight, and chondromalacia patella in both knees. (R. 231.) Plaintiff was employed as a social worker until October 1, 2014, when she stopped working due to her medical conditions. (R. 232–33.)

### A.    Relevant Medical Evidence

The most relevant medical evidence is from the period of time between the date of the alleged onset of disability (May 2, 2018) through the date Plaintiff was last insured under the Social Security Act (December 31, 2019). Other evidence may be considered as long as it relates to Plaintiff's medical conditions during the relevant timeframe, but a plaintiff must prove she became disabled before her insured status expired. *See Hensley v. Colvin*, 829 F.3d 926, 929–30 (8th Cir. 2016) (defining the relevant timeframe as between

---

[1] The Social Security administrative record is filed at Dkt. Nos. 21 through 21-10. The record is consecutively paginated, and the Court cites to that pagination rather than docket number and page.

the onset date and the last-insured date but considering relevant evidence outside that window). In addition, the Court will not summarize all of the medical evidence of record but only the evidence pertaining to the issues under review.

Plaintiff attended an appointment with Kelly Thompson, RN, CNP in June 2018 for follow-up pain treatment. (R. 376.) She had last seen Thompson five months earlier. (R. 363.) Plaintiff reported knee, back, and hip pain, and said she was not out of bed much. (R. 376.) Thompson noted that "working as a social worker on the [medications] she needs to function is really not an option." (R. 376.) Plaintiff's diagnoses included CRPS, degenerative disc disease, and chronic low back pain with sciatica. (R. 376.)

Plaintiff was certified for cannabis therapy in July 2018. (R. 325.) Her certifying condition was "intractable pain," and her reported symptoms were described as severe, aching pain in her lower back and neck; burning and shooting pains in her foot due to CRPS; daily muscle spasms in her back; poor sleep due to pain; mild depression; and anxiety. (R. 326.) Cannabis therapy consultation notes from August and September 2018 document similar symptoms. (R. 320, 322.)

Plaintiff began care with Dr. Adrianne Moen in August 2018. (R. 382.) Her biggest reported problem was insufficient sleep. (R. 383.) Dr. Moen included CRPS as an active diagnosis, as well as depression, right foot drop, nicotine addiction, degenerative disc disease, chronic back pain, and hand swelling and weakness. (R. 384.) Plaintiff's prescriptions included medical cannabis, Flexeril, Cymbalta, Lyrica, Pamelor, Crestor, Percocet, and Advil. (R. 384–85.) A physical examination was generally unremarkable. (R.

386.) Dr. Moen observed no edema in Plaintiff's lower extremities, though Plaintiff used a cane and sat stiffly. (R. 386.)

A month later, Plaintiff told Dr. Moen that medical cannabis was helping with pain control; her hips were no longer aching; her knee pain was 50% better; she was sleeping better; and she felt "better and rested." (R. 388.) She could "do a lot more," including weeding and gardening, and some days did not need to take Percocet. (R. 388.) Her pain was located mostly in her lower right back. (R. 388.) Dr. Moen noted that since Plaintiff was "doing so well," the plan was to "continue to try to eliminate things that may not be helpful." (R. 391.) Dr. Moen emphasized the effect of smoking on pain, but Plaintiff was not ready to quit. (R. 391.)

A week later, Plaintiff reported that her pain had increased after ceasing the medication Pamelor. (R. 393.) Plaintiff had fallen three times, and her sleep was disrupted. (R. 393.) On physical examination, Dr. Moen saw only trace edema. (R. 396.) Plaintiff appeared healthy and in no distress, and no musculoskeletal defects were observed. (R. 396.) Dr. Moen increased the dosage of Cymbalta so that Plaintiff could adjust to a new medical cannabis dosage, and continued the Pamelor. (R. 396.)

By October 2018, Plaintiff reported feeling better overall, though her pain had increased after a fall. (R. 397.) Medical cannabis was helping, and she was able to do more daily activities, with rest periods. (R. 397.) Plaintiff said that her right foot was "worse," however, and cold weather made it feel "frost bit." (R. 397.) A physical examination was generally normal, and no edema was documented. (R. 400.) Dr. Moen noted that Plaintiff

was doing "much better on increased [C]ymbalta and increased medical cannabis." (R. 400.)

In November 2018, Plaintiff reported restless leg syndrome at night, which affected her sleep, and some lower extremity edema, which caused slight trouble putting on socks. (R. 401.) Dr. Moen observed no edema on examination, and a physical examination revealed normal strength, tone, and sensation. (R. 404.) Plaintiff reported worsening pain in December 2018, including "bone pain" in her right shin. (R. 407.) Dr. Moen documented healthy appearance, some point tenderness of the right shin but no swelling, stiff movement, normal strength and tone, and normal sensation. (R. 410.) In February 2019, Plaintiff reported back pain and spasms, trouble sleeping, difficulty concentrating, foot numbness, an unstable ankle, and a foot that turned purple when cold or became "red hot burning." (R. 412.) Dr. Moen noted that Plaintiff had not seen Thompson recently. (R. 412.) Dr. Moen recorded no edema or musculoskeletal defects, but Plaintiff's toes were "exquisitely tender," and she sat uncomfortably and stiffly. (R. 415.) Dr. Moen recommended physical therapy, pool therapy, and a heat wrap as treatment options for the back spasms. (R. 415.)

Plaintiff reported to Gene Beavers, P.A.-C., in January 2019 that the medical cannabis was helping, and Beavers described Plaintiff as healthy, alert, in no acute distress, and having appropriate mood, affect, and eye contact. (R. 338.)

Plaintiff returned to Thompson in February 2019 for a routine visit. (R. 420.) Thompson documented back pain, knee pain, joint pain, and muscular weakness, which

worsened in extreme temperatures. (R. 424.) A physical examination was "normal," though chronic pain was noted. (R. 425.)

In June 2019, Plaintiff returned to Beavers to discuss her medical cannabis treatment. (R. 483.) She said her joint pain was getting worse, and the cannabis was not working as well. (R. 483.) Beavers recertified Plaintiff for cannabis treatment. (R. 484.)

Plaintiff told Thompson in March 2019 that she was "very pleased with the results" of Ritalin, a new medication. (R. 492.) Plaintiff felt energetic and not tired. (R. 492.) The objective portion of the progress note documented no pain with light or deep palpation and no tenderness in the lower back. (R. 492.) Follow-up appointments in May and June 2019 were similar. (R. 493–94.)

Thompson completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) in June 2019. (R. 497–500.) She opined that Plaintiff could occasionally lift or carry less than ten pounds because her "back cannot handle this sustained activity" and that Plaintiff could stand or walk less than two hours in an eight-hour workday. (R. 497.) In addition, Plaintiff would need a hand-held cane to walk, due to chronic back pain and a foot drop. (R. 498.) Further, Plaintiff could sit less than six hours in an eight-hour workday and would need frequent rest and position changes, due to pain and weakness. (R. 498.) Plaintiff could not push or pull on a sustained basis. (R. 498.) Thompson further opined that Plaintiff could never perform any postural activities such as balancing, kneeling, or stooping, and could only occasionally reach, handle, finger, and feel with her hands. (R. 499.) Thompson explained that "sustained activity . . . is the issue."

(R. 499.) Thompson completed another Medical Source Statement a year later, in June 2020, with findings similar to those made in June 2019. (R. 528–31.)

In an intervening progress note from a November 2019 appointment, Thompson remarked that Plaintiff "has been better this past month than she has been in nearly a year or more." (R. 535.) Plaintiff had better sleep and energy and was using less medical cannabis, although her Percocet dosage had increased. (R. 535.) Objective findings were normal.

### B.    Administrative Proceedings

After Plaintiff's DIB application was denied on initial review and reconsideration, an ALJ held a hearing on July 31, 2020. (R. 38.) The hearing was held by telephone due to the COVID-19 pandemic. (R. 40.)

Plaintiff testified she had pain in her lower back and lower right leg every day as a result of CRPS. (R. 45.) The pain and a right foot drop caused problems while walking and standing. (R. 46.) Plaintiff also had a burning sensation, swelling, and numbness in her leg and toes. (R. 46.) She testified she cannot wear socks or shoes when the pain is most severe, usually twice a week. (R. 47.) She spent most days lying down to alleviate the pain. (R. 48.) Medical marijuana and Percocet also helped with the pain. (R. 51.) Plaintiff testified that she could dress and bathe herself every few days, weed her flower garden in the summer, load and unload the dishwasher, do some sweeping, clean some areas of the bathroom, and cook easy meals a few times a week. (R. 49, 53–54.)

Vocational expert Mitchell Norman also testified at the administrative hearing. (R. 57.) The ALJ asked Norman to consider a hypothetical individual of Plaintiff's age; with

the same education and work experience; who would be limited to sedentary work; who would need to use a handheld assistive device in one hand to walk; who could balance, stoop, and kneel only occasionally; who could never crawl, climb, or operate foot controls with her right leg; who could not be exposed to workplace hazards; who could only occasionally tolerate temperature extremes; and who would be limited to simple, routine tasks with no fast-paced production requirements. (R. 58–59.) Norman testified that this person could not work in Plaintiff's former jobs but could work as an order clerk, document preparer, or address clerk. (R. 59.) The ALJ then added a limitation of no more than one hour of standing or walking during a workday, and Norman responded that the hypothetical individual could still perform those jobs. (R. 59–60.) If the person needed to elevate their leg more than six inches above the floor when seated at their workstation, however, Norman testified that would preclude sedentary work. (R. 60.)

The ALJ issued a written decision on August 11, 2020, determining that Plaintiff was not disabled. (R. 9.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R. § 404.1520(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period, which was between the date of the alleged onset of disability (May 2, 2018) through the date she was last insured under the Social Security Act (December 31, 2019). (R. 14.) At the second step, the ALJ found that Plaintiff had severe impairments of "degenerative disc disease of the lumbar spine with leg length discrepancy; complex regional pain syndrome (CRPS); major depressive disorder; and attention deficit disorder." (R. 14.) At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 15.) Because there is

no listing for CRPS, the ALJ considered the closest analogous listings, Listings 1.02 and

14.06. (R. 15.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional

capacity ("RFC")[2]

> to perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) except:
> stand and/or walk a maximum of one hour per day, seated the remainder of
> the day; ability to use a handheld assistive device in one hand for ambulation;
> only occasional balancing, defined as maintaining body equilibrium to
> prevent falling when walking, standing, crouching or running on narrow,
> slippery or erratically moving surfaces; occasional stooping, kneeling; no
> crawling; no climbing of ladders, ropes, or scaffolds; no operation of foot
> controls with the right lower extremity; no exposure to potential workplace
> hazards such as moving machinery or unprotected heights; no more than
> occasional exposure to extreme heat, cold, or vibration; limited to
> performance of simple routine tasks; no fast-paced production requirements,
> such as assembly-line work, defined as work requiring more than frequent
> handling, fingering or reaching bilaterally.

(R. 19.) As part of the RFC assessment, the ALJ considered Plaintiff's diagnosis of CRPS

and other conditions; Plaintiff's reports of pain, weakness, neuropathy, swelling, and

occasional numbness; Plaintiff's medication regimen; and providers' treatment notes. (R.

20–23.) The ALJ also considered the Medical Source Statements submitted by Thompson

but found those opinions not persuasive because they were based primarily on Plaintiff's

subjective complaints, were inconsistent with Plaintiff's comments to Thompson in

November 2019, and were not supported by objective medical findings. (R. 24.)

---

[2] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R.
§ 404.1545(a)(1).

Ultimately, at step four, the ALJ determined that Plaintiff could not perform her past work. (R. 29.) Thus, the ALJ proceeded to step five, where the ALJ found that Plaintiff could make a successful adjustment to other work such as an order clerk, document preparer, or address clerk. (R. 30.) Consequently, Plaintiff was not disabled. (R. 30.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

### C.    Judicial Review

Through this action, Plaintiff seeks reversal of the Commissioner's final decision and remand for either an award of benefits or further administrative proceedings. (Pl.'s Mem. Supp. Mot. Summ. J. at 1, Dkt. No. 27.) She argues that (1) the ALJ failed to discuss SSR 03-2p, which provides guidance on evaluating cases involving CRPS; and (2) the ALJ did not properly consider medical opinion evidence from Thompson. (Pl.'s Mem. at 9, 12.) The Commissioner opposes Plaintiff's motion. (Def.'s Mem. Supp. Mot. Summ. J. at 1, Dkt. No. 30.)

## II.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002)

(citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III.    Discussion

### A.    SSR 03-2p

Plaintiff faults the ALJ for not addressing or applying SSR 03-2p in the written decision. Defendant responds that an ALJ is not required by any binding legal precedent to explicitly mention SSR 03-2p, and further, the ALJ properly evaluated Plaintiff's CRPS in accordance with current regulations.

11

The Social Security Administration ("SSA") publishes SSRs in the Federal Register, and SSRs "are binding on all components of the [SSA]." 20 C.F.R. § 402.35(b)(1). The SSRs "represent precedent final opinions and orders and statements of policy and interpretations that [the SSA has] adopted." *Id.* "Although there is no requirement that an ALJ cite to Social Security Rulings in his or her written decision, the ALJ's decision must be based upon application of the correct legal standard and supported by substantial evidence in the record." *Paul P. v. Saul*, No. GLS 19-CV-2793, 2021 WL 1134751, at *3 (D. Md. Mar. 24, 2021).

SSR 03-2p—issued almost twenty years ago—explains the policies of the SSA when evaluating CRPS or reflex sympathetic dystrophy syndrome ("RSDS"). SSR 03-2p, 2003 WL 22399117, at *1 (SSA Oct. 20, 2003). The terms CRPS and RSDS are synonymous and may be used interchangeably. *Id.* CRPS is marked "by complaints of intense pain and typically includes signs of autonomic dysfunction." *Id.* CRPS patients usually describe "persistent, burning, aching or searing pain that is initially localized to the site of" a previous injury. *Id.* The diagnostic criteria for CRPS are "the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region," plus:

- Swelling;
- Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), skin temperature changes, or abnormal pilomotor erection (gooseflesh);
- Abnormal hair or nail growth (growth can be either too slow or too fast);
- Osteoporosis; or
- Involuntary movements of the affected region of the initial injury.

*Id.* at \*2. The syndrome does not progress according to any certain timeframe. *Id.* The most important treatments are patient education and activity programs to increase limb mobility and use during daily activities. *Id.* at \*3. Some patients receive injections of long-lasting anesthetics to reduce pain and block sympathetic nerve activity. *Id.* Narcotics and neurostimulators may also be used. *Id.*

CRPS is documented by medical signs, laboratory findings, and treatment records showing ongoing evaluation and treatment from medical sources. *Id.* at \*4. Conflicting evidence is not unusual "due to the transitory nature of its objective findings and the complicated diagnostic process involved." *Id.* at \*5. Consistent with SSR 96-3p and SSR 96-7p—rulings which since have been rescinded or superseded[3]—SSR 03-2p instructs that medical opinions from a claimant's providers "are entitled to deference and may be entitled to controlling weight." *Id.*

At the RFC assessment phase and fourth step of the sequential analysis, SSR 03-2p instructs that "careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Id.* at \*7. Medical source opinion evidence about the effects of CRPS "on the individual's ability to function in a sustained manner in performing work activities" can be helpful in evaluating the impairment and related functional limitations. *Id.*

---

[3] SSR 96-3p was rescinded on June 14, 2018, and SSR 96-7p was superseded on March 28, 2016.

Courts in the Eighth Circuit have had infrequent occasion to discuss SSR 03-2p. In *Combs v. Astrue*, the Eighth Circuit considered a plaintiff's argument that the ALJ did not follow SSR 03-2p's procedures in evaluating RSDS. 243 F. App'x 200, 205 (8th Cir. 2007). The court rejected the argument because the plaintiff did "not identify anything in particular the ALJ did wrong under SSR 03-2p . . . ." *Id.* In response to the plaintiff's related argument that the ALJ did not find a diagnosis or severe impairment of RSD[S], the court found that the ALJ properly considered the evidence of record and found it insufficient to deem the plaintiff unable to work, explaining that "[o]nce a diagnosis of RSD[S] is found, the determination of whether someone is disabled is made the same way it is for any other condition." *Id.* Accordingly, an ALJ should follow the five-step sequential evaluation process in determining disability for a claimant with CRPS, just as the ALJ would for any medical condition. *See Adams v. Colvin*, No. 4:14-CV-00687 JLH-JTR, 2015 WL 9237073, at *3 (E.D. Ark. Nov. 27, 2015) (finding the ALJ properly considered RSDS by following "the sequential evaluation process, just as for any other impairment"), *R. & R. adopted*, 2015 WL 9165902 (E.D. Ark. Dec. 16, 2015); *Burts v. Colvin*, No. 2:12-CV-93 ACL, 2014 WL 4681348, at *12 (E.D. Mo. Sept. 19, 2014) ("Disability claims involving RSD[S] are evaluated using the five-step sequential evaluation process . . . just as for any other impairment.").

### 1.    Whether the ALJ Should Have Explicitly Mentioned SSR 03-2p

Plaintiff suggests that the ALJ's failure to explicitly mention SSR 03-2p in the written decision requires reversal. The Court does not agree. The failure to cite SSR 03–2p "does not equate with a finding that [the ALJ] failed to consider the Ruling or abide

thereby." *Burts*, 2014 WL 4681348, at *14. As long as the ALJ's findings are supported by SSR 03-2p, that will suffice. *Caldwell v. Astrue*, No. 07-6073-CV-SJ-GAF-SSA, 2008 WL 11417596, at *3 (W.D. Mo. Sept. 18, 2008), *aff'd*, 365 F. App'x 740, 2010 WL 582616 (8th Cir. 2010). As discussed in detail below, the ALJ's evaluation of Plaintiff's CRPS was consistent with and supported by SSR 03-2p to the extent that Ruling still corresponds with current SSA regulations.

### 2. Whether the ALJ Was Required to Contact Plaintiff's Treating Sources to Clarify Conflicting Medical Evidence

Plaintiff next argues that the ALJ was required to seek additional information from her medical providers because the ALJ found inconsistencies between Plaintiff's claimed symptoms and the record as well as inconsistencies between Thompson's medical opinions and objective medical findings. (Pl.'s Mem. at 10–11.) Plaintiff relies on the following language from SSR 03-2p:

> It should be noted that conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved. Clarification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources.

2003 WL 22399117, at *5.

The Court begins with Plaintiff's argument that the ALJ should have recontacted Thompson or another medical provider because the ALJ found inconsistencies between Plaintiff's subjective reports of symptoms and the record. SSR 03-2p addresses only conflicts in the "medical evidence," such as objective findings and diagnoses, not conflicts between a claimant's subjective reports of symptoms and the medical evidence. An

individual's reports of symptoms are not medical evidence. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) ("[S]ubjective complaints are the opposite of objective medical evidence."); *see also Monlux v. Astrue*, No. 11-cv-4180, 2012 WL 6586401, at *23 (D.S.D. Nov. 21, 2012) (noting that a statement of symptoms is not medical evidence), *R. & R. adopted*, 2012 WL 6586387 (D.S.D. Dec. 17, 2012). SSR 03-2p does not require an ALJ to obtain clarification from a treating source to resolve inconsistencies involving a claimant's subjective reports of symptoms.

Turning to Plaintiff's argument that the ALJ should have recontacted Thompson or another medical provider because of inconsistencies between Thompson's Medical Source Statements and objective clinical findings, it is important to recall that the ALJ found the Medical Source Statements not persuasive because they were *not supported by* objective findings, not because they *conflicted with* other medical evidence. Supportability and consistency are two distinct concepts. *See* 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be."). SSR 03-2p does not require an ALJ to obtain clarification from a medical provider when an opinion is *not supported by* objective findings, but only when an opinion *conflicts with*—in other words, is not consistent with—other medical evidence.

But even if SSR 03-2p could be read to require the ALJ to obtain clarification from Thompson or another treating source, the Court questions the continued validity of the paragraph on which Plaintiff relies. The paragraph, which refers and seems to give some

deference to a claimant's "treating" source, hearkens to now-defunct language in 20 C.F.R. § 404.1527. That regulation applied to claims filed before March 27, 2017—not Plaintiff's—and gave more "weight," potentially even "controlling weight," to a claimant's "treating" sources. *See* 20 C.F.R. § 404.1527(c)(2). But for claims filed on or after March 27, 2017—such as Plaintiff's—20 C.F.R. § 404.1520c sets forth the standards for an ALJ to review medical opinion evidence and prior administrative medical findings. Significantly, no special deference is afforded to "treating" sources; no "weight" is awarded to medical opinion evidence; and a treatment relationship is just one of several *secondary* factors (the primary factors being supportability and consistency) an ALJ should consider in evaluating the persuasiveness of medical opinion evidence. *See* 20 C.F.R. § 404.1520c(c).

The SSA did not rescind or supersede SSR 03-2p when § 404.1520c replaced § 404.1527, and at least one court has decided, in a case with a DIB claim filed after March 27, 2017, that an ALJ must follow SSR 03-2p's directive to recontact a claimant's treating source to clarify conflicting evidence. *Gallagher v. Kijakazi*, No. 20-CV-5701, 2022 WL 283017, at *6 (E.D. Pa. Jan. 31, 2022).[4] The *Gallagher* court first acknowledged the

---

[4] Plaintiff cited several cases for the proposition that an ALJ's failure to evaluate a claimant's RSDS or CRPS in accordance with SSR 03-2p is erroneous, but none of those cases involved a claim filed after March 27, 2017, when 20 C.F.R. § 404.1520c became effective. *See Channell v. Kijakazi*, No. 2:18-CV-1059-JTA, 2021 WL 3131669, at *1 (M.D. Ala. July 23, 2021); *Paul P. v. Saul*, No. GLS 19-CV-2793, 2021 WL 1134751, at *1 (D. Md. Mar. 24, 2021); *Maya T. v. Saul*, No. 6:19-CV-819-SI, 2020 WL 2301314, at *1 (D. Or. May 8, 2020); *Carroll v. Berryhill*, No. 3:15-CV-503-GMB, 2017 WL 559581, at *1 (M.D. Ala. Feb. 10, 2017); *Volk v. Astrue*, No. 3:11-CV-533-J-TEM, 2012 WL 4466480, at *1 (M.D. Fla. Sept. 27, 2012).

revised regulations governing the consideration of medical opinion evidence and found that the ALJ did not err by declining to evaluate medical opinions under the revised or rescinded rules mentioned in SSR 03-02p. *Id.* at *5. The court then determined that the ALJ should have recontacted the plaintiff's treating sources because of varying examination findings the ALJ relied on in finding one of the source's assessments unpersuasive. *Id.* at *6. The examination findings the ALJ relied on contained conflicting evidence about left-hand swelling, reduced range of motion, extension lag in all fingers, inability to make a fist, shiny skin, cool skin, and difficulty grabbing pinching, and lifting. *Id. Gallagher* is distinguishable from this case because the *conflicting* objective examination findings that were present in *Gallagher* are not present here. Rather, the ALJ found that Thompson's opinions were *not supported by* any objective findings.

In contrast to *Gallagher*, at least one other court has questioned the rigidity of SSR 03-2p's requirement that an ALJ recontact a claimant's treating source, given the Ruling's reference to and reliance on regulations and rulings that are now obsolete. *See Angela M. L. v. Kijakazi*, No. 20-CV-00606-SH, 2022 WL 850513, at *3–5 & n.9 (N.D. Okla. Mar. 22, 2022). The court in *Angela M. L.* considered a similar requirement in SSR 03-2p to recontact a treating source first, before ordering a consultative examination, when an ALJ finds the evidence "inadequate to determine whether the individual is disabled." *Id.* at *3 (citing SSR 03-2p, 2003 WL 22399117, at *4). That recontact requirement was based on the version of 20 C.F.R. § 404.1512 in effect when SSR 03-2p was issued in 2003. *See Angela M. L.*, 2022 WL 850513, at *4. In 2012, however, § 404.1512 was revised and no longer obligated an ALJ to recontact a treating source. *See Angela M. L.*, 2022 WL 850513,

at *4. The *Angela M. L.* court refused to "graft a requirement" from SSR 03-2p onto current regulations that had been revised intentionally to remove the recontact requirement. *Id.* Invoking the recontact requirement at issue here—when clarification of conflicting medical evidence is needed—the *Angela M. L.* court pointed out that "SSR 03-02p was also drafted to comply with the since-abrogated 'treating physician rule.'" *Id.* at *5 n.9. The court thus signaled that the recontact requirement at issue here, which prioritizes clarification from a claimant's "treating" source, was abrogated along with the treating physician rule contained in 20 C.F.R. § 404.1527.

The Court finds *Angela M. L.* persuasive. Just as 20 C.F.R. § 404.1512 no longer requires an ALJ to recontact a claimant's treating source to resolve evidentiary inconsistencies, medical evidence from treating sources is no longer due any deference or weight, *see* 20 C.F.R. §§ 404.1520b, 404.1520c(a). Requiring an ALJ to abide by rules that the SSA has rejected makes no sense. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017) (rescinding SSR 96-2p for being inconsistent with new regulation eliminating the "weight" assigned to medical opinions from treating sources). Moreover, it is well established that an ALJ is not only capable of, but responsible for, resolving conflicts in the medical evidence. *E.g.*, *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009); *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). And the Eighth Circuit has indicated that an ALJ should determine disability based on CRPS the same as for any other condition. *Combs*, 243 F. App'x at 205. In cases involving other conditions, an "ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial

issue is undeveloped." *Grindley v. Kijakazi*, 9 F.4th 622, 629–30 (8th Cir. 2021) (quotation omitted).

The Court finds that the ALJ did not err in resolving the inconsistencies between Plaintiff's claimed symptoms and the record or the inconsistencies between Thompson's medical opinions and objective findings. The ALJ explained in great detail why Plaintiff's claimed symptoms were not consistent with objective medical evidence, Plaintiff's daily activities, Plaintiff's medication regimen, and Plaintiff's reports of improvement. (R. 21–23.) The ALJ committed no legal error in that discussion, and substantial evidence supports that part of the ALJ's decision. As discussed more fully in Part III.B. below, the ALJ also considered Thompson's opinions in accordance with 20 C.F.R. § 404.1520c, properly finding the opinions not persuasive because they were based mostly on Plaintiff's subjective complaints, were not supported by objective findings, and did not account for Plaintiff's recent improvement. (R. 24.) The Court concludes that no additional clarifying statements from Thompson were needed because no critical issue was undeveloped.

### 3.    Whether the ALJ Should Have Given Deference or Controlling Weight to Thompson's Opinions

Plaintiff's final argument based on SSR 03-2p is that a treating source's medical opinion is "entitled to deference" and possibly "controlling weight" under the Ruling. (Pl.'s Mem. at 11–12.) This language echoes the now obsolete language of SSR 96-3p and SSR 96-7p. SSR 96-3p has been rescinded, and SSR 96-7p has been superseded. Furthermore, for claims filed on or after March 27, 2017, such as Plaintiff's, opinion evidence from a claimant's treating provider is no longer given deference or a specific evidentiary weight

such as "controlling weight." *See* 20 C.F.R. § 404.1520c(a). It would not be sensible or reasonable to require an ALJ to abide by rules the SSA has rescinded or replaced. The Court finds the ALJ was not required to give special deference or controlling weight to Thompson's opinions because that would have been contrary to the regulation applicable to her claim, 20 C.F.R. § 404.1520c.

### 4.    The ALJ Properly Considered Plaintiff's CRPS

Plaintiff has identified no other error with the ALJ's evaluation of her CRPS. Nevertheless, the Court has assessed the ALJ's consideration of this condition and concludes the ALJ's findings are supported by substantial evidence on the record as a whole and free from legal error.

The ALJ determined at step two of the sequential evaluation process that CRPS was a severe impairment. *See* SSR 03-2p, 2003 WL 22399117, at *6. At step three, the ALJ assessed CRPS under two analogous listings because CRPS is not a listed impairment. *See id.* ("Since RSDS/CRPS is not a listed impairment, an individual with RSDS/CRPS alone cannot be found to have an impairment that meets the requirements of a listed impairment. However, the specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist."). In assessing Plaintiff's RFC, the ALJ evaluated all of Plaintiff's symptoms as required by SSR 16-3p. Although SSR 03-2p references SSR 96-7p as providing the applicable standard for considering the effects of pain, *see* SSR 03-02p, 2003 WL 22399117, at *7, SSR 96-7p has been superseded by SSR 16-3p. Here, the ALJ properly followed SSR 16-3p in evaluating Plaintiff's pain and other symptoms related to her CRPS; Plaintiff does not argue otherwise. At the RFC stage, the

ALJ also considered "[o]pinions from [Plaintiff's] medical sources, especially treating sources, concerning the effect(s) of RSDS/CRPS on [her] ability to function in a sustained manner in performing work activities, or in performing activities of daily living." *See* SSR 03-02p, 2003 WL 22399117, at \*7. As discussed fully below in Part III.B., the ALJ considered Thompson's opinions in accordance with 20 C.F.R. § 404.1520c and did not err in finding those opinions unpersuasive. Finally, at step five of the sequential evaluation, the ALJ followed "the usual vocational considerations . . . in determining [Plaintiff's] ability to perform other work." *See* SSR 03-02p, 2003 WL 22399117, at \*8. Plaintiff does not argue otherwise.

In sum, the Court finds that the ALJ followed the sequential evaluation process in considering CRPS, along with Plaintiff's other medical conditions. The Court further finds the ALJ's evaluation of Plaintiff's CRPS complied with SSR 03-2p to the extent the Ruling is consistent with current regulations.

### B.    The ALJ's Consideration of Thompson's Opinions

Plaintiff argues the ALJ erred in considering the persuasiveness of Thompson's medical opinions. Under 20 C.F.R. § 404.1520c, medical opinions are evaluated for their "persuasiveness" according to five factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

The ALJ found Thompson's opinions unpersuasive for three reasons: the opinions were based mostly on Plaintiff's subjective complaints, were not supported by objective

findings, and did not account for Plaintiff's recent reported improvement. An ALJ may reduce the persuasive value of an opinion that is based largely on a claimant's subjective complaints. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (giving "less weight" to an opinion based mostly on subjective complaints). The Court has reviewed Thompson's treatment records and finds they do not contain independent observations or examination findings that would support the significant limitations opined in the Medical Source Statements. The only entries on the treatment records that would support the limitations on the Medical Source Statements are Thompson's summaries of Plaintiff's subjective complaints.

With respect to the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(i). As the ALJ stated, Thompson's opinions were "not well supported by objective findings, which are devoid of abnormal and significant neurological compromise." (R. 24.) Nor were Thompson's opinions well-supported by other objective medical evidence. To the contrary, physical examinations were generally unremarkable, and providers such as Dr. Moen and Thompson rarely directly observed edema, weakness, tenderness to palpation, abnormal sensation, or sensitivity to temperatures. In addition, medications were largely effective once proper dosages and combinations were determined.

As to Plaintiff's significant improvement in November 2019, Thompson's second opinion, rendered in June 2020, took no account of Plaintiff's report that she was better

than she had been in a year. Thompson's own objective findings at the November 2019 appointment were normal and contained no findings or observations that would support the limitations noted on the June 2020 Medical Source Statement.

Plaintiff submits that Thompson's opinions were consistent with Dr. Moen's treatment records, but Plaintiff refers only to the subjective complaints contained within those records. (Pl.'s Mem. at 14–15.) Dr. Moen's objective medical evidence is not consistent with the limitations opined in Thompson's Medical Source Statements. For example, Dr. Moen documented almost no edema, frequent improvement in pain relief, and generally normal examination findings such as normal strength, tone, and sensation.

As a final matter, Plaintiff suggests that the ALJ's designation of all medical opinion evidence (both that of Thompson and the medical consultants) as unpersuasive left no persuasive opinion on which the ALJ could rely. (Pl.'s Mem. at 15.) No law or regulation requires an ALJ to find at least one opinion persuasive, however. Although RFC is a medical question, and some medical evidence must support it, *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001), it is not necessary that some medical *opinion* evidence support it, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion."). Medical records prepared by a claimant's doctor are sufficient to support an RFC assessment. *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011); *see also KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372–73 (8th Cir. 2016) (finding the RFC was adequately supported where, in arriving at the RFC, the ALJ properly considered the medical evidence, the plaintiff's reported functioning and activities, and the plaintiff's testimony in arriving at the RFC). Here, the

ALJ based the RFC on medical evidence. Although Plaintiff would have preferred the ALJ to rely on different medical evidence, the Court has considered both the supporting and detracting evidence and finds that there is substantial evidence to support the ALJ's RFC determination.

## IV.    Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff's Motion for Summary Judgment (Dkt. No. 26) be **DENIED**;

2.    Defendant's Motion for Summary Judgment (Dkt. No. 29) be **GRANTED**;

3.    The Commissioner's decision be **AFFIRMED**; and

4.    **JUDGMENT BE ENTERED ACCORDINGLY**.

Date: April 19, 2022                              *s/ John F. Docherty*
                                                  JOHN F. DOCHERTY
                                                  United States Magistrate Judge

## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).